**CROLL-REYNOLDS CO., Inc., et al.,
Appellants,**

v.

**PERINI-LEAVELL-JONES-VINELL
et al., Appellees.**

No. 24346.

United States Court of Appeals
Fifth Circuit.

Sept. 11, 1968.

Rehearing Denied Oct. 18, 1968.

Certiorari Denied Jan. 20, 1969.

See 89 S.Ct. 688.

Felix H. Lapeyre of Chaffe, McCall, Phillips, Burke, Toler & Hopkins, New Orleans, La., Nelson Littell, Jr., New York City, Jennings Bailey, Jr., of Bailey, Stephens & Heuttig, Washington, D. C., for appellants.

George M. Thurmond, Del Rio, Tex., Jarrett Ross Clark, Chicago, Ill., William A. Denny, Milwaukee, Wis., for appellees, F. Kristen Koepcke, Milwaukee, Wis., of counsel.

Before JONES and GODBOLD, Circuit Judges, and SCOTT, District Judge.

JONES, Circuit Judge:

The appellants are the owners of patents for methods and apparatus for the cooling of concrete ingredients and mixes. The appellees are contractors or subcontractors engaged in the construction of a portion of the Amistad Dam across the Rio Grande River for the United States. The construction contract required that concrete, when deposited in the forms, should have a temperature of not more than 50 and not less than 40 degrees Fahrenheit.[1] This required that concrete be cooled prior to pouring into the forms. The contract does not require that the cooling be done by any particular method or process. The contract does contain a provision covering the use of inventions.[2] The appellees in-

1. "Concrete, when deposited in the forms, shall have a temperature of not more than 50 degrees F. and not less than 40 degrees F. Heating of the mixing water and/or aggregates will not be permitted until the temperature has decreased to 45 degrees F. The materials shall be heated in such a manner that they will be free from ice, snow, and frozen lumps before

entering the mixer. All materials and equipment shall be subject to approval."

2. "The Government hereby gives its authorization and consent (without prejudice to its rights of indemnification, if such rights are provided for in this contract) for all use and manufacture, in the performance of this contract or any part

stalled cooling equipment, as contemplated by the terms of the contract,[3]
and the contracting officer of the Government, as provided by the contract,[4]

hereof or any amendment hereto or any subcontract hereunder (including any lower-tier subcontract), of any invention described in and covered by a patent of the United States (i) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract, or (ii) utilized in the machinery, tools or methods the use of which necessarily results from compliance by the Contractor or the using subcontractor with (a) specifications or written provisions now or hereafter forming a part of this contract, or (b) specific written instructions given by the Contracting Officer directing the manner of performance. The Contractor's entire liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clause, if any, included in the contract and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted."

3. "(1) Payments will be made under this contract on the actual expenditures made by the Contractor for mobilization and preparatory work as follows: The Contractor may submit to the Contracting Officer certified accounts of the actual payments made by him for construction plant exceeding $10,000 in value per unit, as appraised by the Contracting Officer at the site of the work, acquired for the execution of the work; for the transportation of all plant and equipment to the site; for material purchased for the prosecution of the contract, but not to be incorporated in the work; for construction of camps, access roads or railroads, trailer courts, mess halls, dormitories or living quarters; field headquarters facilities and construction yards; and for personal services and hire of plant on work preparatory to commencing actual work on the construction items for which payment is provided under the terms of the contract. Accounts so submitted must be accompanied by certificate of the Contractor, supported by receipted bills or certified copies of payrolls and freight bills, showing that he has acquired said construction plant and material free from all encumbrances and agreement that it will not be removed from the site and that structures and facilities prepared or erected for the prosecution of the contract work will be maintained and not dismantled prior to the completion and acceptance of the entire work without the written per-

mission of the Contracting Officer. If the Contracting Officer finds that said construction plant, material, equipment and the mobilization and preparatory work performed are suitable and necessary to the efficient prosecution of the contract and that the said preparatory work has been done with proper economy and efficiency, payment, less the prescribed retained percentage, will be made therefor to the Contractor. Payment for construction plant, material and structures and facilities prepared or erected for prosecution of the contract work shall not exceed the cost thereof to the Contractor less the estimated value upon the completion of the contract as determined by the Contracting Officer. In no event shall such payment exceed 100% of the cost to the Contractor of any such items which have no appreciable salvage value and 75% of the cost to the Contractor of such items which have an appreciable salvage value. No payment will be made in reimbursement of the premium paid on the performance bond or payment bond. The findings of the Contracting Officer as to the suitability and value of the construction plant, equipment, materials, structures or facilities shall be final.

"(2) Payments for mobilization and preparatory work will be made in accordance with (1), above, and such payments will be deducted from the contract price for Item No. 15 "Mobilization and Preparatory Work for Concrete Placement" until the total amount thus charged to this item reduces this item to zero, after which no further payments will be made under this item. If the total of such payments made does not reduce this item to zero, the balance will be paid to the Contractor in the final payment under the contract. The retained percentage will be paid in accordance with Provision 7, of the contract. Should the contract be terminated as provided in paragraph SC— because of the failure of Congress to provide additional funds for its completion, the Contractor may be permitted to remove plant and material on which payments for preparatory work have been made subject to an equitable deduction from the amounts due the Contractor to reimburse the United States for the unabsorbed value of such plant and material."

4. "If the Contracting Officer finds that said construction plant, material, equipment and the mobilization and preparatory work performed are suitable and

approved the cooling facility and equipment. The Government made payment for it to the appellees.

The appellants, asserting that the cooling done by the appellees was by the use of their patented methods and devices, brought an action alleging infringement and seeking an injunction and damages. Among their defenses the appellees asserted that the court did not have jurisdiction of the subject matter of the action under the provisions of 28 U.S.C.A. Sec. 1498(a).[5] The jurisdictional issue was tried separately. The district court determined that the cooling equipment was used for the Government and with its authorization and consent, and hence the sole remedy of the appellants was by an action against the United States in the Court of Claims as is provided by Section 1498. A judgment dismissing the action for want of jurisdiction was entered. We agree with the decision of the district court and affirm its judgment.

The Government contract required that the concrete be cooled before being used in the construction. This required that equipment and facilities be constructed to carry out this part of the work. The Government approved the cooling equipment and facilities and, as its contract required, made payment for it. The absence of any designation or specification in the contract that would require the use of the appellant's invention does not preclude a finding that there has been a use for the Government with the authorization and consent of the Government. The cooling equipment was constructed by the contractor for use in the performance of its contract with the Government, and it was so used. Hence there was a use for the Government. The approval and payment evidences, conclusively, we think, the Government's authorization and consent. It does not matter that there may have been other cooling devices or systems that might have been used. If some other system had been installed, another claimant under another patent might be the appellant here. Under Section 1498 the appellants' remedy, if any they have, is against the United States in the Court of Claims. Stelma, Incorporated v. Bridge Electronics Co., Inc., 3rd Cir. 1962, 300 F.2d 761; Bereslavsky v. Esso Standard Oil Co., 4th Cir. 1949, 175 F.2d 148; Consolidated Vacuum Corporation v. Machine Dynamics, Inc., D.C.S.D.Calif. 1964, 230 F.Supp. 70.

The issues of patent validity and infringement were not considered or decided by the district court and, of course, are not considered or decided by this Court.

The judgment of the district court is affirmed.

GODBOLD, Circuit Judge (specially concurring):

I concur with the conclusion that under the facts of this case the patented device was used for the government with its authorization and consent. The record before us discloses that the equipment for cooling the concrete used in the construction of a government-owned dam was assembled especially for the project. The equipment was located on government property and the full output of

necessary to the efficient prosecution of the contract and that the said preparatory work has been done with proper economy and efficiency, payment, less the prescribed retained percentage, will be made therefor to the Contractor."

5. "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

"For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States." 28 U.S.C.A. Sec. 1498(a).

concrete was used to construct the dam. A large portion of the mobilization payments made to the contractor under the contract was for the cooling apparatus. Notwithstanding the silence of the contract specifications on the particular method by which the concrete was to be cooled,[1] these facts support the conclusion that the device employed by the contractor was "used" for the government. That equipment is constructed by a contractor for use in the performance of a government contract, and is so used, do not alone constitute "use" for the government within the meaning of 28 U.S.C.A. § 1498.

---

1. See Bereslavsky v. Esso Standard Oil Co., 175 F.2d 148 (4th Cir. 1949).